UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CARRIE WILKINSON, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) No. 1:24-cv-205 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| UNUM LIFE INSURANCE COMPANY | ) Magistrate Judge Christopher H. Steger |
| OF AMERICA and UNUM GROUP CORP., | ) |
| | ) |
| *Defendants.* | ) |

**M E M O R A N D U M**

Before the Court is Plaintiff Carrie Wilkinson's motion for judgment on the record. (Doc. 23.) Defendants, Unum Life Insurance Company of America and Unum Group Corporation (collectively, "Unum"), responded in opposition (Doc. 25), and Plaintiff replied (Doc. 26). The Court heard oral argument from both parties on April 30, 2025. (Doc. 28.) For the following reasons, the Court will **GRANT** Plaintiff's motion (Doc. 23) and will **ENTER** judgment in her favor.

I.    **BACKGROUND**

Plaintiff brings the present action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*., to obtain judicial review of Unum's termination of her long-term disability benefits. (Doc. 1.) Plaintiff previously worked for KPC Promise Healthcare, LLC, as its Chief Clinical Officer ("CCO"). (*Id*. ¶ 11.) As part of her employment, Plaintiff was covered by a long-term disability plan (the "Plan") issued and administered by Unum. (*Id*. ¶¶ 12–13.)

The Plan provides in part:

> For the first 27 months, you are totally disabled when, as a result of sickness or injury, you are unable to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation in the usual and customary way. After benefits have been paid for 24 months of disability you are totally disabled when, as a result of sickness or injury, you are not able to engage with reasonable continuity in any occupation in which you could be reasonably expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.

(Doc. 20-1 [ERISA Admin. Rec.] at 171.) The Plan defines "substantial and material acts" as duties that "are generally required by employers from those engaged in your usual occupation that cannot be reasonably omitted or modified." (*Id.* at 191.) The Plan also defines "usual occupation" as the occupation you are routinely performing when your disability begins and provides that Unum will "determine whether those duties are customarily required of other individuals engaged in your usual occupation." (*Id.*)

Plaintiff began her employment with KPC Promise Healthcare in June 2016. (*Id.* at 6.) As CCO, Plaintiff was responsible for planning, organizing, developing, and directing the hospital's nursing services and other clinical functions. (*Id.* at 137.) She also did general nursing duties when the hospital was short-staffed. She worked in this role until January 2023 when she became unable to work due to her medical conditions and applied for short-term disability. (Doc. 1 ¶ 15.) After expiration of short-term disability, Plaintiff filed a claim for long-term disability benefits under the Plan on April 10, 2023. (*Id.* ¶ 17; Doc. 20-1 [ERISA Admin. Rec.] at 71.)

Following this, Unum requested medical records relating to Plaintiff's conditions. (Doc. 20-1 [ERISA Admin. Rec.] at 74.) Plaintiff's treating neurosurgeon, Dr. Sanjoy Sundaresan, completed an attending physician statement. (*Id.* at 82–83.) Dr. Sundaresan noted Plaintiff suffered from cervical and lumbar radiculitis and prescribed her gabapentin, rest, and MRIs. (*Id.* at 83.) Dr. Sundaresan also explained Plaintiff complained of severe chronic neck pain radiating

2

mostly to the right upper extremity, and an MRI of the cervical spine showed a moderate disk bulge. (*Id*. at 115.) He noted medications and injections were improving Plaintiff's function and pain some; however, Plaintiff was offered a neck surgery, known as an anterior cervical discectomy with fusion, after she tried and failed more conservative options. (*Id*. at 116.) Plaintiff underwent this neck surgery on April 12, 2023. (*Id*. at 704–05.) From January 13, 2023, to May 13, 2023, Dr. Sundaresan recommended that Plaintiff not lift, twist, bend, or have long periods of standing or sitting. (*Id*. at 93.)

Unum approved Plaintiff's long-term disability claim on April 28, 2023, but informed her that it would be reviewing her claim in May pending her recovery from surgery. (*Id*. at 311–18.) Starting in May 2023, Unum began its review of the claim and requested updated medical records. (*Id*. at 313.) Unum reached out to Dr. Sundaresan who recommended that Plaintiff lift no more than ten pounds for the three months after surgery. (*Id*. at 461.)

Unum also reviewed records from Plaintiff's other treating physicians. Records obtained from Plaintiff's Primary Care Physician, Jose Audie Lim, MDPA, indicated that Plaintiff experienced no serious complications from her fusion surgery but that she still had tingling in her fingers. (*Id*. at 442.) The medical records from Dr. Lim's office indicated Plaintiff had diagnoses of rheumatoid arthritis, Sjögren syndrome, hypertension, cervical disc disease, peripheral neuropathy, and hyperlipidemia. (*Id*.) Dr. Lim noted Plaintiff suffered from peripheral neuropathy in her feet and tenderness to palpation in her hands and wrists but exhibited a normal range of motion in her joints and extremities. (*Id*.) He also found that Plaintiff had mobility impairment due to her neck problems and rheumatoid arthritis. (*Id*. at 443.) On June 7, 2023, Dr. Lim recommended that Plaintiff lift no more than thirty pounds and avoid prolonged periods of standing. (*Id*. at 447.)

3

Records obtained from Plaintiff's Rheumatologist, Erin K. Shiner, M.D., indicated she diagnosed Plaintiff with rheumatoid arthritis. (*Id.* at 426.) Dr. Shiner noted that although Plaintiff's cranial nerves and sensation were grossly intact and Plaintiff had normal motor strength and movement in her extremities, Plaintiff also had contracture, tenderness, and synovitis in her joints, bones, and muscles, and had swelling in her hands with limited range of motion. (*Id.* at 425–26.) Dr. Shiner did not make a recommendation as to Plaintiff's limitations. (*Id.* at 419.)

Unum also obtained records from Plaintiff's Cardiologist, Vedampattu Ganeshram, MD, FACC, from a follow-up appointment for Plaintiff's "uncontrolled" hypertension. (*Id.* at 503.) Dr. Ganeshram's notes indicate Plaintiff denied having any chest pain or problems, yet there was some evidence of mild abnormalities with her heart. (*Id.* at 503–04.) Like Dr. Shriner, Dr. Ganeshram did not make a recommendation as to Plaintiff's limitations. (*Id.* at 498.)

Upon obtaining these medical records, Unum forwarded Plaintiff's claim to Vocational Rehabilitation Consultant Simon Leung, MS, CRC, for vocational review to identify the duties of Plaintiff's occupation. (*Id.* at 462–64.) Mr. Leung reviewed the job description provided by Unum and considered the extra tasks identified by Plaintiff such as the staff nursing work she performed. (*Id.* at 463.) He determined Plaintiff's occupation in the local economy was most consistent with a Chief Nursing Officer position, with a primary duty of overseeing and coordinating the daily activities of the nursing department and ensuring standard practices are followed. (*Id.* at 462–63.)

He also concluded that Plaintiff's occupation was sedentary, which required (i) mostly sitting with brief periods of walking or standing; (ii) occasionally lifting, carrying, pushing, and pulling up to ten pounds; (iii) frequent fingering and keyboard use; and (iv) occasional reaching. (*Id.* at 464.) Unum then forwarded Plaintiff's claim to Clinical Consultant Amanda DeHay, BSN, RN, CMSRN, for vocational review. Ms. DeHay summarized the medical records and concluded

4

that Plaintiff's restrictions and limitations were only supported until May 12, 2023, three months after her neck surgery. (*Id*. at 512–13.)

On June 28, 2023, Unum informed Plaintiff it was terminating her long-term disability benefits because her medical records did not show she could not perform the duties of her usual occupation. (*Id*. at 534–35.) Unum determined that although Plaintiff's treating physicians did opine limitations, "they were not of such degree that would preclude Plaintiff from performing the duties of her sedentary occupation." (Doc. 25 at 8.) Plaintiff's counsel appealed Unum's decision and submitted additional records for consideration. (Doc. 20-1 [ERISA Admin. Rec.] at 631–36.) These records included those from Dr. Sundaresan, which showed that from May through October 2023 Plaintiff continued to seek treatment for her neck and back pain. (*Id*. at 707, 711, 715, 719.)

The records also included those from Plaintiff's Neurologist, Danny Bartel, M.D., dated October 26, 2023. (*Id*. at 695–702.) These records indicate Plaintiff underwent an electromyography, a diagnostic test that evaluates the function of skeletal muscles and nerves, which confirmed Plaintiff had radiculopathy in her lumbar region and wrist neuropathy consistent with carpal tunnel syndrome. (*Id*. at 701–02.) Further, Plaintiff had positive clinical findings, including a positive Spurling's sign in her cervical spine, moderate pain with her range of motion, ataxia with her balance and gait, and a positive Babinski sign. (*Id*. at 698–99.) The records show Dr. Bartel ordered numerous studies to test for disorders including multiple sclerosis. (*Id*. at 699.)

Plaintiff also submitted records from Dr. Lim's office. (*Id*. at 724–27.) Over several months, Dr. Lim noted sluggish mobility and ordered several tests to rule out multiple sclerosis. (*Id*. at 725–26.) In November 2023, Dr. Lim found Plaintiff to be noticeably slow and stiff, and noted she continued to have pain in multiple joints, was dropping things, and was unable to properly write or type. (*Id*. at 727.) Plaintiff submitted an opinion form from Dr. Lim which listed

several restrictions and limitations, including sitting for one hour at a time, standing or walking for only forty-five to sixty minutes at a time, lifting up to ten pounds for two-thirds of the day, and lying down for approximately two hours in a workday. (*Id*. at 787–89.) He indicated she would require a one-hour break for every three hours of work and that she would have lapses in memory or concentration due to pain, medication, and her medical condition daily for several hours per day. (*Id*.) He also opined she had variable issues with fine manipulation, typing, writing, and grasping and would be absent three to four days per month. (*Id*.)

In addition to the updated medical records, Plaintiff submitted photos of her swollen feet and hands (*id*. at 835–46) and a National Institutes of Health fact sheet on her medication, Methotrexate (*id*. at 848–52). She also submitted a functional capacity evaluation ("FCE") done on December 6, 2023, which provided significant restrictions and limitations for Plaintiff. (*Id*. at 791–833.) The FCE noted gait and balance issues, decreased coordination in her hands, and decreased muscle strength. (*Id*. at 792.) The FCE found that Plaintiff could lift up to six pounds, but that she would be limited to occasional sitting, standing, walking, balancing, grasping, fingering, and reaching overhead. (*Id*. at 793.) She could not perform several activities, including bending, twisting, squatting, kneeling, climbing stairs, and driving. (*Id*.)

Thirty days later, Plaintiff submitted additional records for Unum's consideration, including opinions from Dr. Lim and Dr. Bartel who both agreed with the FCE. (*Id*. at 874, 876.) She also submitted a vocational evaluation from Ashley Johnson, MS, CRC, CLCP, who concluded that Plaintiff's duties corresponded to both nursing service director and general duty nurse and was medium level in physical demand. (*Id*. at 878–89.) Ms. Johnson found that the findings of the FCE and Plaintiff's providers conflicted with even performing at a sedentary level. (*Id*. at 885–86.)

6

Plaintiff submitted more photos of her swollen feet and hands (*id*. at 925–937) and provided declarations from Plaintiff and her husband about her pain and daily capabilities (*id*. at 919–20, 922–23). In addition to these documents, Plaintiff submitted a letter from Dr. Sundaresan, who noted his continued treatment of Plaintiff's chronic pain even after her surgery. (*Id*. at 959.) He explained that Plaintiff's symptoms made it difficult for her to drive prolonged distances or work in any capacity that involved the use of her arms. (*Id*.) He also noted she had degenerative disk and facet disease in her lower back, leaving her with severe pain, that, in his opinion, would not benefit from further surgery. (*Id*.) Although continued injections helped, they were not curative, and he opined that she would not be able to work in any significant capacity. (*Id*.)

Unum forwarded the file to Senior Vocational Rehabilitation Consultant, G. Shannon O'Kelly, M.Ed., CRC, who performed a vocational review and found that Plaintiff's occupation required sedentary work. (*Id*. at 983–85.) Unum then forwarded the file to Senior Clinical Consultant, Elizabeth Israel, RN, BSN, for review. (*Id*. at 963–65.) After this review, the file was reviewed by Appeals Physician Arlen Green, D.O., board certified in physical medicine and rehabilitation. (*Id*. at 968–78.)

Dr. Green concluded that no restrictions and limitations were supported that would prevent Plaintiff from performing sedentary work. (*Id*. at 971.) Specifically, Dr. Green found "the variable physical exam findings across providers, the lack of significant concerning pathology, and the intensity of treatment [did] not support [restrictions and limitations] that preclude [Plaintiff] from performing the occupational demands . . . ." (*Id*.) He asserted that Dr. Bartel's findings and the FCE were not consistent with the other attending physicians' exams, and that the FCE and Dr. Bartel's exam took place a few months after the denial, so they did not reflect her functional capacity in June 2023. (*Id*.) Further, Dr. Green emphasized that there were no medical escalations

like hospitalization, concerning diagnostic pathology, physical therapy, or rehabilitation. (*Id*.) He also noted that Plaintiff had been recommended biologic therapy but was not pursuing it. (*Id*.)

On February 16, 2024, Unum informed Plaintiff it had determined Plaintiff's medical information no longer supported restrictions and limitations precluding her from performing her occupation. (*Id*. at 1002–03.) Unum gave Plaintiff time to review and respond before it made a final decision. (*Id*.) Plaintiff submitted additional records for consideration, including updated medical records, FCE forms, a second declaration by Plaintiff stating she was not receiving biologic therapy because she was being tested for various conditions including multiple sclerosis, and a website for Dr. Green showing he specialized in knee pain rather than lumbar pain. (*Id*. at 1159–85.)

On March 20, 2024, however, Unum notified Plaintiff that it was upholding its denial of benefits. (*Id*. at 1192–1203.)

Unum stated the following findings in support of its decision.

- The Appeal Physician found that the "medical records [did] not contain findings consistent with the reported severity of [Plaintiff's] complaints that would preclude her ability to perform sedentary level occupational demands." (AR 1198).[1]

- "There is no documentation of clinical findings such as persistent postop complications, infection, abscess or hardware failure of the cervical spine." (AR 0704, 0198).

- Plaintiff's medical records revealed that Plaintiff was ambulating independently, neurologically intact including 5/5 strength in all extremities, experiencing 80% relief with lumbar injections, normal motor strength, grossly intact sensation, and in no acute distress. (AR 0097, 0117, 0125, 0425-26, 0707-719, 0761, 0765, 0769, 0969, 0971, 01198).

- "[T]here is no significant concerning diagnostic pathology, no documentation of any physical therapy or rehabilitation, no documented evidence of hospitalizations or any other noted medical escalations of care

---

[1] Unum cites to the Administrative Record as AR.

8

surrounding [Plaintiff's] numerous reported symptoms and conditions which is inconsistent with the level of functional impairment reported." (AR 1199).

- "[T]he variable physical exam findings across providers, the lack of significant concerning pathology, and the intensity of treatment does not support R/Ls that preclude the claimant from performing the occupational demands as defined as of 6/29/23."

(AR 1192-1203).

(Doc. 25 at 9–10.)

On June 21, 2024, Plaintiff filed this action, seeking judicial review of Unum's denial of her long-term disability benefits. (Doc. 1.) Plaintiff now moves for judgment on the ERISA administrative record (Doc. 23), and her motion is ripe for the Court's review.[2]

## II.  STANDARD OF REVIEW

 "Denials of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) are reviewed *de novo* 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *McClain v Eaton Corp. Disability Plan*, 740 F.3d 1059, 1063 (6th Cir. 2014) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  The parties agree the appropriate standard of review is *de novo* because the plan does not grant discretion to the plan administrator.  (Doc. 24 at 10; Doc. 25 at 10.)

Under a *de novo* standard of review, the plan administrator's decision is afforded no deference or presumption of correctness.  *Hoover v. Provident Life & Acc. Ins.*, 290 F.3d 801, 808–09 (6th Cir. 2002).  Instead, the "role of the court . . . is to determine whether the administrator . . . made a correct decision" to deny benefits.  *Id.* at 809.  In making this determination, courts only consider the evidence available to the plan administrator at the time the final decision was

_____

[2] As set forth in the Court's Scheduling Order, Unum is also "deemed to have moved for judgment in [its] favor based upon the administrative record."  (Doc. 14 ¶ 4.)

rendered. *McClain*, 740 F.3d at 1064. Courts apply general principles of contract law and must read the plan provisions "according to their plain meaning in an ordinary and popular sense." *O'Neill v. Unum Life Ins. Co. of Am.*, No. 18-1382, 2018 WL 7959523, at *3 (6th Cir. Nov. 19, 2018) (quoting *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000)). Although there is no deference given to the plan administrator's decision, the insured bears the burden of proof by a preponderance of the evidence. *O'Neill*, 2018 WL 7959523, at *3. "To succeed in [her] claim for disability benefits under ERISA, Plaintiff must prove by a preponderance of the evidence that [s]he was 'disabled,' as that term is defined in the Plan." *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 700 (6th Cir. 2014).

## III. DISCUSSION

Plaintiff has moved for judgment on the ERISA record, arguing that Unum incorrectly terminated her long-term disability benefits. (Doc. 23.) To determine whether Plaintiff was capable of performing "the material and substantial duties" of her "usual occupation" under the Plan, the Court will first define the nature of work required for Plaintiff's usual occupation. The Court will then consider the weight of the evidence and determine whether Unum correctly terminated Plaintiff's long-term disability benefits.

### A. Plaintiff's Usual Occupation

Plaintiff argues Unum's decision should be overturned because "Unum did not identify her occupation correctly and thus did not consider whether [she] could perform all the aspects of her own occupation." (Doc. 24 at 26.) The Court will first evaluate "the material and substantial duties" of Plaintiff's "usual occupation" and whether Unum properly considered the duties of Plaintiff's regular occupation under the Plan.

10

The Plan states,

> For the first 27 months, you are totally disabled when, as a result of sickness or injury, you are unable to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation in the usual and customary way. After benefits have been paid for 24 months of disability you are totally disabled when, as a result of sickness or injury, you are not able to engage with reasonable continuity in any occupation in which you could be reasonably expected to perform satisfactorily. . . .

(Doc. 20-1 [ERISA Admin. Rec.] at 171.)  The Plan defines "substantial and material duties" as duties that "are generally required by employers from those engaged in your usual occupation that cannot be reasonably omitted or modified."  (*Id.* at 191.)  The Plan also provides that Unum will "determine whether those duties are customarily required of other individuals engaged in your usual occupation."  (*Id.*)

Here, the parties disagree about which duties should be considered in Plaintiff's regular occupation and whether her occupation required medium capacity or sedentary capacity. According to the job description of CCO, Plaintiff was responsible for planning, organizing, developing, and directing the hospital's nursing services and other clinical functions.  (Doc. 21-1 [ERISA Admin. Rec.] at 137.)  The CCO also "performs such other duties as may be necessary in the best interest of the hospital."  (*Id.*)

Plaintiff claims that "in the best interest of the hospital," she regularly had to complete shifts as a general staff nurse due to staffing shortages.  (Doc. 24 at 25.)  Relying on this "other duties" phrase in the job description, Plaintiff argues Unum should have considered these general nursing duties in her usual occupation, thus finding her occupation to be a "medium" exertion level.  In response, Unum argues "Plaintiff's occasional performance of duties outside of the applicable material and substantial duties, which Plaintiff contends falls within the overly broad

11

'all other duties' category and should qualify, is woefully insufficient to render her position one that requires medium strength." (Doc. 25 at 23.)

Because the CCO job description focuses on managerial duties, the Court finds it unlikely the broad "all other duties" phrase in the CCO job description incorporates Plaintiff's occasional staff nursing duties. Regardless of the job description, however, Plaintiff is still limited by the Plan's definition of "substantial and material acts." To meet the definition of disability under the relevant policy language, Plaintiff would have to be unable to perform those duties that are "customarily required of other individuals engaged in [her] usual occupation." (*See* Doc. 20-1 [ERISA Admin. Rec.] at 191.)

Here, Unum appropriately used the Dictionary of Occupational Titles ("DOT") and identified "the most closely analogous DOT-recognized occupation"— namely, the job of chief nursing officer. (Doc. 25 at 22.)

> [T]he use of the DOT to define the material duties of Plaintiff's regular occupation is appropriate because the duties that the DOT enumerates are not substantially different from those that Plaintiff actually performed. Courts have held that for an insurer to use a general job description to define the material duties of an occupation, it must involve comparable duties but not necessarily every duty of the claimant's actual occupation.

*See Conway v. Reliance Standard Life Ins. Co.*, 34 F. Supp. 3d 727, 733–34 (E.D. Mich. 2014). Because nursing duties are not customarily required of other individuals engaged in her usual occupation, they are not material and substantial duties within Plaintiff's usual occupation. Given the plain reading of the Plan, *see O'Neill*, 2018 WL 7959523, at *3, Unum did properly consider Plaintiff's job duties and correctly determined her usual occupation as one of sedentary capacity.

### B. Unum's Decision to Deny Benefits

Finding that Unum did properly consider Plaintiff's job duties, the Court now must assess whether Unum properly denied Plaintiff's long-term disability benefits. Plaintiff suggests Unum's

review was plagued with flaws. For example, Plaintiff argues "Unum's file reviewer cherry-picks the evidence and relies on improper rationales to deny [her] claim." (Doc. 24 at 17.) Plaintiff additionally argues Dr. Green's opinion should be disregarded "because he offers improper reasons for rejecting the findings of the FCE and Dr. Bartel." (*Id*. at 20.) These flaws, however, "are all beside the point because 'it is irrelevant on *de novo* review whether a plan administrator's decision was principled or reasoned.' Rather, '[t]o succeed in [her] claim for disability benefits under ERISA, Plaintiff must prove by a preponderance of evidence that [s]he was 'disabled,' as that term is defined in the Plan.'" *Bustetter v. Standard Ins. Co*., 529 F. Supp. 3d 693, 707 (E.D. Ky. 2021), *aff'd*, No. 21-5441, 2021 WL 5873159 (6th Cir. Dec. 13, 2021) (quoting *Javery*, 741 F.3d at 699–700).

Plaintiff argues that, even if her occupation only requires sedentary capacity, "the evidence submitted by [her] and her treating providers is more than enough to demonstrate her disability from any level of work." (Doc. 24 at 13.) She argues she has met her burden through "consistent, credible opinions and objective evidence including an objective FCE." (Doc. 26 at 3.) Unum disagrees and argues that the record lacks objective evidence. (Doc. 25 at 14–15.)

Despite Unum's statement, Plaintiff brings forth at least some objective medical evidence. The records indicate Plaintiff underwent an electromyography, a diagnostic test that evaluates the function of skeletal muscles and nerves. (Doc. 20-1 [ERISA Admin. Rec.] at 701.) This test confirmed Plaintiff had radiculopathy in her lumbar region and wrist neuropathy consistent with carpal tunnel syndrome. (*Id*. at 702.) The records also indicate Plaintiff had positive clinical findings, including a positive Spurling's sign in her cervical spine, moderate pain with her range of motion, ataxia with her balance and gait, and a positive Babinski sign. (*Id*. at 698–99.) Further, Plaintiff provided pictures of her swollen feet and hands. (*Id*. at 835–46.)

13

While Plaintiff's objective evidence includes proof of her medical conditions, she must also show she cannot perform "with reasonable continuity the substantial and material acts necessary to pursue [her] usual occupation in the usual and customary way." (*See id*. at 171.) As objective evidence of her ability to perform her duties, Plaintiff provided an FCE. *See Barnes v. Unum Life Ins. Co. of Am.*, No. 1:19-CV-138, 2020 WL 10221073, at *3 (E.D. Tenn. Nov. 24, 2020) (citing *Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 499–500 (6th Cir. 2008) ("One method of objective proof of disability, for instance, is a functional capacity evaluation, a 'reliable and objective method of gauging' the extent one can complete work-related tasks.")).

The FCE provided significant restrictions and limitations for Plaintiff due to "significant nerve pain in bilateral hands and feet, sensory impairments in bilateral hands and feet, decreased muscle strength and coordination, and overall weakness and poor endurance/deconditioning complicated by joint stiffness and fluctuating edema." (Doc. 20-1 [ERISA Admin. Rec.] at 792.) The FCE states that Plaintiff gave consistent effort during the evaluation. (*Id.* at 824–33.) After concluding the evaluation, the report found Plaintiff's medical conditions impacted her functional reach and ability to tolerate job-related tasks. (*Id*. at 792.) According to the FCE, Plaintiff could lift up to six pounds, but was limited to occasional sitting, standing, walking, balancing, grasping, fingering, and reaching overhead. (*Id*. at 792–94.) She could not perform several activities, including bending, twisting, squatting, kneeling, climbing stairs, and driving. (*Id*. at 793–96.) Based on the severity of her impairments and demands of her occupation, the FCE deemed Plaintiff "unable to work at this time." (*Id*. at 792.)

There is much debate about how much weight the Court should give the FCE. Unum argues the FCE is "fatally flawed" and should be disregarded because "it is markedly inconsistent with physical-examination findings and with the opinions of Plaintiff's treating physicians." (Doc.

25 at 19.)    Primarily, Unum argues there are inconsistencies as to Plaintiff's ambulation and muscle strength.  "For example, although the FCE found that Plaintiff was able to walk 380 feet without a device but with observable unsteadiness, frequent use of surroundings for support, and a cautious gait, . . . Plaintiff's own physicians regularly found Plaintiff was ambulating independently with no acute distress."  (*Id*.)  Unum notes "[t]hough the FCE determined Plaintiff was significantly limited in a variety of areas, most of her treating healthcare providers did not opine any [restrictions and limitations] or very limited [restrictions and limitations] relating primarily to lifting."  (Doc. 25 at 19.)  Further, as Unum highlights, the FCE was performed outside the initial period of review considered by Unum in making its benefits determination.  Unum suggests the FCE "sheds little light on whether Plaintiff was disabled in June 2023" because it was completed in December 2023, more than five months after Plaintiff was determined to not be disabled.  (*Id*. at 20.)

Unum's arguments regarding the FCE are unpersuasive.  First, any "inconsistencies" between the FCE and Plaintiff's physicians' notes regarding her ambulation and muscle strength are not "credibility-shattering."  *See Barnes*, 2020 WL 10221073, at *4.  The medical records do not appear to be blatantly inconsistent with the FCE, albeit the FCE is more thorough and comprehensive than the average doctors' notes.  *See, e.g., Pagan v. Comm'r of Soc. Sec*., No. 1:14-CV-1108, 2015 WL 4644587, at *6 (N.D. Ohio Aug. 4, 2015) (quoting *Orr v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) ("The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations.")).

Despite Unum's contention, the FCE's finding that Plaintiff could only walk 380 feet and did so unsteadily does not contradict other findings that Plaintiff could ambulate independently.

*See Barnes*, 2020 WL 10221073, at *4. If anything, the FCE confirms that Plaintiff was ambulating independently, though with difficulty. *See id.* This is consistent with Dr. Lim's examination that she was ambulating independently but was noticeably slow and guarded. (Doc. 20-1 [ERISA Admin. Rec.] at 833.) Likewise, while Unum tries to argue there were inconsistent notes from two doctors who saw Plaintiff on the same day, doctors perform varying clinical tests and there is evidence Plaintiff's "condition is chronic and has relapses with varying degrees of discomfort and pain at any given time of day." (*Id*. at 961.)

"In situations such as this, the reviewer cannot simply dismiss a claimant's documented limitations, particularly where the individuals purporting to make that credibility determination did not meet or examine the claimant. While Unum was not required to examine [Plaintiff], this lack of examination renders Unum's claim reviewers' criticism of h[er] symptoms and testing less persuasive." *See Akans v. Unum Life Ins. Co. of Am*., No. 3:23-CV-79, 2024 WL 1200301, at *10 (E.D. Tenn. Mar. 20, 2024), *appeal dismissed*, No. 24-5387, 2024 WL 3496351 (6th Cir. May 22, 2024) (citing *Bruton v. Am. United Life Ins. Corp*., 798 F. App'x 894, 904 (6th Cir. 2020)).

Second, the fact that Plaintiff's cardiologist and rheumatologist did not provide opinions as to her restrictions and limitations is not evidence that she is not disabled. There is no evidence in the record as to why these doctors did not give opinions. The lack of response could be due to various reasons, including the fact physicians have busy schedules with many different responsibilities and obligations. Moreover, "the fact [Plaintiff] was not limited from a [cardiology] standpoint . . . trails in importance within the Court's inquiry" because the opinion would have nothing to do with the reasons why she went on disability. *See Akans*, 2024 WL 1200301, at *9.

Third, the FCE should not be disregarded just because it was performed five months outside the initial period of review considered by Unum. *Compare Ruben v. Metro. Life Ins. Co*., No.

16

3:04-CV-7592, 2006 WL 286002, at *6 (N.D. Ohio Feb. 3, 2006) (finding that an FCE two years after benefits were denied shed no light on the plaintiff's disability at the time she stopped working). In a sworn declaration, Plaintiff stated the FCE was reflective of her condition in June 2023. (Doc. 20-1 [ERISA Admin. Rec.] at 1124.) There is:

> no evidence that the condition documented in the FCE was meaningfully different from [Plaintiff's] condition at the time she applied for benefits. While it would be ideal to have an FCE performed right at the moment that an individual stopped work, one that is performed in a reasonably close period of time may still be relevant, at least in the absence of some reason to conclude that there was an intervening change in the beneficiary's health.

*Boersma v. Unum Life Ins. Co. of Am.*, 546 F. Supp. 703, 712 n.5 (M.D. Tenn. June 29, 2023) (citing *Holden v. Unum Life Ins. Co. of Am.*, No. 1:19-CV-28, 2020 WL 6136223, at *4, *6 n.3 (E.D. Tenn. Oct. 19, 2020)). Since Unum's arguments are unpersuasive, the Court will accept the FCE as objective evidence of Plaintiff's ability to work.

The Court will next address the opinions of the healthcare professionals. The administrative record contains conflicting medical evidence regarding whether Plaintiff could perform her usual occupation. Dr. Lim and Dr. Bartel—Plaintiff's treating physicians—opined she could not perform her occupation or any occupation. (Doc. 20-1 [ERISA Admin. Rec.] at 874, 876.) Dr. Greene—Unum's reviewing physician—contends Plaintiff's medical records did not support the conclusion that she could not perform light work. (*Id*. at 968–78.) In situations where the opinions of treating physicians contradict the opinions of non-treating physicians, the Court of Appeals for the Sixth Circuit has explained, "courts may not conclude that the opinion of treating physicians is entitled to more weight than that of non-treating physicians." *Bruton*, 798 F. App'x at 904 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003)). Instead, "[o]n *de novo* review . . . , the court is to take into account all of the medical evidence, giving each doctor's opinion weight in accordance with the supporting medical tests and objective findings

17

that underlie the opinion." *Crider v. Highmark Life Ins. Co.*, 458 F. Supp. 2d 487, 505 (W.D. Mich. 2006).

As with the FCE, the parties disagree about how much weight to give to the various physicians' opinions. Plaintiff argues Unum's reviewing physician Dr. Green's opinion should be disregarded because his stated specialty on his website is knee pain rather than spinal and neck pain. (Doc. 24 at 20–21.) The Court does not find this critique persuasive. As a board-certified physician in physical medicine and rehabilitation, Dr. Green is "a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." *See Castor v. AT & T Umbrella Benefit Plan No. 3,* 728 F. App'x 457, 461 (6th Cir. 2018) (quoting 29 C.F.R. § 2560.503-1(h)(3)(iii)).

On the other side, Unum argues the opinions of Plaintiff's treating physicians should be discredited. Unum suggests Plaintiff's treating physicians cannot be believed or trusted because their opinions changed during the appeal. (Doc. 25 at 16.)

> At the benefit review stage, Dr. Lim opined limited [restrictions and limitations] of lifting no greater than 30 pounds and no prolonged standing. (AR 0447). However, during the appeal review, Dr. Lim provided a Medical Opinion Form to Plaintiff's counsel that inexplicably opined a wide variety of [restrictions and limitations], to wit: (i) sitting no more than one hour at a time; (ii) standing or walking no more than 45-60 minutes at a time; (iii) lifting 20 pounds or less; (iv) lying down and resting during a normal work day for approximately two hours; (iv) additional breaks during the day; and (v) a limited or complete inability to type, write, grasp small objects, and engage in fine manipulation. (AR 0787-89). Dr. Lim then concluded, for the first time, that Plaintiff had "a reasonable medical need to be absent from a full time work schedule on a chronic basis . . . ." (AR 0787-89). At the benefit review stage, Dr. Sundaresan also opined very limited R&Ls of lifting no greater than 10 pounds for three months post-op. (AR 0461). However, in a Medical Opinion Letter submitted to Plaintiff's counsel during the benefit appeal, Dr. Sundaresan opined that Plaintiff was unable to "work in any significant capacity" and was disabled. (AR 0959)

(*Id.*) Unum insinuates that Dr. Lim and Dr. Sundaresan, Plaintiff's treating physicians, changed their opinions without justification during the appeal process to help her get benefits. (*Id.* at 16–17.)

In response, Plaintiff argues,

[t]o believe that Dr. Lim and Dr. Sundaresan have conspired to 'change their opinions' with no medical basis in favor of [Plaintiff's] disability claim requires the court to disbelieve the medical evidence about [Plaintiff's] lack of improvement following her back surgery, the statements her providers signed, and to believe that both of these doctors were willing to put their licenses on the line in order to conspire to help her get disability benefits.

(Doc. 26 at 7.)

The Court finds there is no evidence that Dr. Lim and Dr. Sundaresan changed their opinions for the purpose of helping Plaintiff gain benefits. While the doctors did opine less-restrictive limitations initially, the medical records indicate Plaintiff continued having pain even after surgery, which led her doctors to opine more restrictive limitations. Further, the forms Unum used to ask these doctors questions at the various stages in the appeal process varied in specificity. As Plaintiff notes, "[i]t is hardly surprising that Dr. Lim might offer a more detailed response to more detailed questions . . . ." (Doc. 26 at 5–6.) Rather than inconsistent, the later opinions appear more specific and thorough. After considering the potential bias that Plaintiff's treating physicians might have based on their relationships with her, the Court ultimately finds the treating physicians' assessments to be credible. *See Boersma*, 546 F. Supp. 3d at 714.

The Court has analyzed the parties' credibility arguments and will now determine whether Plaintiff has met her burden of proving disability under the Plan. There is no question Plaintiff has a well-documented history of chronic back and neck pain from medical conditions including cervical and lumbar radiculitis. The Court has little doubt Plaintiff's conditions have contributed to significant decreases in her functional capacity. The relevant inquiry, though, is whether these

19

conditions made Plaintiff totally disabled and unable to work in June 2023. *See Saunders v. Procter & Gamble Health & Long-Term Disability Benefit Plan*, No. 1:15-CV-154, 2015 WL 13037566, at *9 (S.D. Ohio Dec. 28, 2015), *aff'd*, 659 F. App'x 272 (6th Cir. 2016) (citing *Huffaker v. Metro. Life Ins. Co.*, 271 Fed. Appx. 493, 502 (6th Cir. 2008) ("The critical question . . . is not whether [the plaintiff] does or does not have fibromyalgia . . . but whether she is disabled under the plan.")).

The opinions of Plaintiff's physicians are consistent and demonstrate Plaintiff's failure to medically improve even after surgery, thus necessitating greater restrictions and limitations over time. *See Barnes*, 2020 WL 10221073, at 10. In addition to medical records, Plaintiff provided objective evidence of her ability to work through the FCE. *Compare Tranbarger v. Lincoln Life & Annuity Co. of New York*, No. 2:20-CV-00945, 2022 WL 912244, at *7 (S.D. Ohio Mar. 29, 2022), *aff'd*, 68 F.4th 311 (6th Cir. 2023) (noting the plaintiff could have met her burden with objective evidence of her functional capacity like an FCE). The FCE found Plaintiff "is limited with overall postures for sitting, standing, walking, and has limitations with performing work activities due to limited ability to engage in any activity without significant pain and fatigue as well as loss of strength and coordination impacting repetitive task performance for any job"—all limitations that would affect her ability to perform as a CCO based on Unum's job description. (Doc. 20-1 [ERISA Admin. Rec.] at 795; *compare id.* at 171 *with id.* at 137–44.)

These limitations were "supported by the recommendations of h[er] own doctors, who are the only doctors that have examined h[er]." *See Barnes*, 2020 WL 10221073, at *11. While Unum critiques the FCE's authority, "if [Unum] had doubts about the credibility of the FCE, [it] should have asked Plaintiff to take another FCE or to be examined by one of their physicians." *See id.* at *11 (citing *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263–64 (6th Cir. 2006)).

Because Plaintiff has shown she was unable to perform the tasks required of her as a CCO, the Court finds her medical conditions prevented her from performing her sedentary occupation. Therefore, based on the objective medical evidence, objective evidence of her ability to work, and the opinions of her physicians, Plaintiff has met her burden of proving by a preponderance of the evidence that she is disabled under the Plan as of June 28, 2023. *See Javery*, 741 F.3d at 699–700.

## IV.    CONCLUSION

Upon a *de novo* review of the record, the Court finds Plaintiff has properly shown she was disabled under the Plan and Unum incorrectly terminated her long-term disability benefits. Therefore, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings (Doc. 23) and **ENTER** judgment in her favor.  It will be **ORDERED** that Plaintiff's long-term disability benefits be reinstated retroactive to June 28, 2023, through the date of the Judgment Order.  The Clerk of Court will then be **DIRECTED** to close the case.


**AN APPROPRIATE ORDER WILL ENTER.**


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

21